IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Joint Case No. 04 B 23758 |
| | ) | |
| POLO BUILDERS, INC., *et al.*, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Hon. A. Benjamin Goldgar |

**OBJECTION OF BEHLUL ZAKIUDDIN TO FINAL FEE APPLICATION OF FREEBORN & PETERS LLP AS SPECIAL COUNSEL TO CHAPTER 7 TRUSTEE AND FIRST HOLDBACK FEE APPLICATION OF K&L GATES LLP AS COUNSEL TO THE CHAPTER 7 TRUSTEE**

Behlul Zakiuddin ("Zakiuddin"), holder of an allowed general unsecured claim in the above captioned case, by and through his counsel, SmithAmundsen LLC, hereby objects to the Final Fee Application of Freeborn & Peters LLP as Special Counsel to the Chapter 7 Trustee and Request to Limit Notice (the "F&P Application") and the First Holdback Fee Application of K&L Gates LLP as Counsel to the Chapter 7 Trustee and Request to Limit Notice and for Pro-Rata Payment (the "K&L Application", and together with the F&P Application, the "Applications") and respectfully states as follows:

**BACKGROUND**

1. On June 23, 2004, Polo Builders, Inc. ("Polo"), M&MM Enterprises, LLC ("M&M"), Hasan Merchant and Sheri Merchant (the "Merchants") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On June 29, 2004, M.G. International LLC ("MG", and together with Polo, M&M and the Merchants, collectively, the "Debtors"), also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 16, 2004, the chapter 11 cases were voluntarily converted to chapter 7 cases and David R. Brown was appointed as the Debtors' chapter 7 trustee (the "Trustee"). The cases have been jointly administered but not substantively consolidated.

2. On September 22, 2004, the court entered an order authorizing the Trustee to retain Freeborn & Peters LLP ("F&P") as special counsel.

3. On June 23, 2006, the very deadline for the filing of avoidance actions in these cases, the Trustee filed a single adversary case, docketed as case number 06-1168, naming over seven hundred defendants in violation of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. That adversary was subsequently dismissed pursuant to a severance order entered by the Court, and the Trustee then filed approximately two hundred adversary complaints naming the same parties as defendants which were named in the original complaint. Many of these "amended" complaints were deficient in failing to plead essential elements of a cause of action for fraudulent transfer. As a result, the Trustee had to file amended complaints for a second time. Ultimately, the vast majority of the avoidance actions were dismissed without yielding any recovery for the Debtors' estates, and only a handful of these actions now remain pending.

4. On September 26, 2007, the Court entered an order authorizing the Trustee to substitute and retain the law firm of Bell Boyd & Lloyd LLP as special counsel. The order specifically provided that F&P would remain as co-counsel to the Trustee in the adversary proceeding titled David R. Brown, Trustee v. Real Estate Resource Management, LLC, *et al.*, case number 04 A 4032 (the "RERM Adversary"). On March 1, 2009, the law firm of Bell Boyd & Lloyd LLP merged into the law firm of K&L Gates LLP ("K&L", and together with F&P, collectively, the "Applicants").

5. On May 7, 2009, the K&L Application was filed seeking interim allowance of $595,995.50 in legal fees and $8,804.37 for expenses incurred during the period of September 4, 2007 through February 8, 2009.

6. Shortly thereafter, the F&P Application was filed on May 20, 2009. The F&P Application seeks the final allowance of $3,873,629.60 in legal fees and $178,829.06 for expenses incurred during the periods of April 2005 through July 2005, and June 2006 through September 4, 2007.

7. To date, approximately $4.4 million in legal fees have been incurred by the Trustee through his retention of the Applicants alone. Various other professionals have been retained by the Trustee and, when the fees charged to the estate by those other professionals is combined with those fees charged by the Applicants, the cost of professional fees to these estates easily approaches or exceeds $5 million.

8. In contrast, to date, only approximately $3 million has been collected by the Debtors' estates through asset sales and litigation. Much of the Applicants' legal fees were generated through the pursuit of questionable litigation despite little likelihood of any significant recovery for creditors of the Debtors' estates.

## **OBJECTION**

9. Zakiuddin objects to the relief sought in the Applications, and requests that the Court (1) deny such relief, (2) vacate the interim compensation order entered on November 10, 2004 (the "Interim Order"), and (3) deny further interim or final compensation to the Applicants pending a review of all professional fees sought and paid in the cases. In particular, Zakiuddin objects to the relief requested by the Applications because (A) the compensation requested is not reasonable; and (B) allowing such compensation would deplete the Debtors' estates to the detriment of creditors.

10. Before proceeding further, Zakiuddin notes that objections to the Applications, and a supplement to those objections, has already been filed on behalf of

the Debtors. Zakiuddin joins in the Debtors' objections to the Applications and incorporates the arguments raised in same as if fully stated herein.

A. **THE COMPENSATION REQUESTED IS NOT REASONABLE AND SHOULD BE DISALLOWED**

11. Section 330(a)(1) of the Bankruptcy Code provides that professionals such as attorneys may receive reasonable compensation for the actual, necessary services rendered by such professionals, as well as reimbursement for actual, necessary expenses. The determination of "reasonable" compensation is performed through the evaluation of some of the following factors such as: (a) the time spent on such services; (b) the rates charged for those services; (c) whether the services were necessary or beneficial at the time they were rendered; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the issue addressed; (e) whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330.

12. In order to aid the Bankruptcy Court for the Northern District of Illinois, Local Rule 5082-1 was promulgated to require that certain information be submitted by an applicant in order to determine the reasonableness and necessity of the applicant's fees and expenses. Neither of the Applications complied with this rule, which requires that an application include a narrative summary of the tasks performed, further requiring a summary list of all principal activities of the applicant, giving the total compensation requested in connection with each such activity. Furthermore, applicants are required to give a separate description of their principal activities along with details as to individual tasks performed within such activity. These details allow courts to review how much

4

time was spent on a given activity, such as prosecution of avoidance actions or liquidation of assets, and enables courts to determine if the charges for a particular activity are reasonable.

13. The invoices submitted with the Applications provide no guidance whatsoever to this Court or any of the creditors in the cases to evaluate the reasonableness and necessity of the charges. Page after page of the invoices submitted by F&P and K&L contain time entries which are not delineated by, or indicate, what activity was performed (*e.g.*, liquidation of assets) for the services purported to have been provided. Because the Applications themselves do not provide a summary of the principal activities each firm performed or the total amount charged for those activities, this Court and creditors are left to comb through the invoices (which are several inches thick) to try and determine what specific activities the Applicants have been engaged in for a period of several years and what benefit the Debtors' estates have received from those activities.

14. More troublesome is the fact that the Applicants have already been admonished by Judge Jack B. Schmetterer for submitting a fee application in the RERM Adversary that was almost identical to the Applications. The application submitted in the RERM Adversary had numerous deficiencies resulting in a substantial reduction of the fees sought by F&P and K&L.

**The RERM Adversary**

15. The Applicants seek before this Court the allowance of fees and expenses which Judge Schmetterer already disallowed in the RERM Adversary. While an exhaustive comparison of the F&P Application in relation to the application filed in the RERM Adversary has not yet been conducted by Zakiuddin due to time limitations, it

5

appears that many of the fees and expenses currently sought by F&P were actually disallowed by Judge Schmetterer in the RERM Adversary.

16.    A preliminary comparison of K&L's application filed in the RERM Adversary and its current application has been performed revealing that K&L is seeking the allowance of at least $51,209 related to the RERM Adversary for services already found to be unreasonable by Judge Schmetterer.  A copy of Judge Schmetterer's Additional Findings of Fact and Conclusions of Law Regarding Attorneys' Fees, Costs, and Expenses (the "Opinion") is attached hereto as <u>Exhibit A</u>.

17.    In the RERM Adversary, the Trustee sued Real Estate Resource Management LLC ("RERM") and two other parties under breach of contract, alter ego and fraud theories in a four count amended complaint.  The Trustee sought actual damages of $1,005,811 or liquidated damages of $833,000.  He was awarded actual damages of $150,739.71 plus pre-judgment interest pursuant to the first count of the complaint for breach of contract.  The Trustee was not successful with regard to the remaining counts, and it is worth noting that the judgment still remains to be collected.

18.    Following the judgment, the Trustee sought attorneys' fees from RERM in the amount of $882,044.90[1], $20,300 in expert witness costs, and $2,278.15 in expenses, totaling $904,623.05.  Of the $882,044.90 in attorneys' fees, Judge Schmetterer commented in his opinion that the number was "remarkably close to the amount that [the Trustee] lost." (Opinion, p. 4.)

19.    The Court allowed only $90,000 in attorneys' fees, a 90% reduction, citing the Trustee's failure to follow Local Rule 5082-1 in submission of his fee application, resulting in the inability of the Court to determine the reasonableness and necessity of the

---

[1] Of this amount, $806,520.40 is attributable to F&P's fees and $75,524.50 is attributable to K&L's fees.

fees. (Opinion, p. 20.) The Opinion also called into question whether the Trustee exercised good business judgment in pursuing litigation and allowing attorneys' fees of $882,044.90 to accrue for litigation against a party that may not have had enough assets to pay a judgment. (Opinion, p. 20.). RERM was a shell company with little assets, and it is clear that the Trustee was aware for some time prior to proceeding to judgment that it would be extremely difficult to collect any award. (Opinion, p. 21.) Ultimately, Judge Schmetterer found that the Applicants sought fees disproportionate to a reasonable estimate of the value of the claim. (Opinion, p. 22.)

20. The Applicants now seek to recover the same fees from creditors which were already found to be unreasonable in the RERM Adversary. However, F&P has volunteered to reduce its fees by $774,725.92 due to the "prosecution of certain claims on behalf of the Trustee, the viability of which were questioned by both Judge Goldgar and Judge Schmetterer." The amount of the reductions is very close to the amount of fees charged by F&P in the RERM Adversary, and may have already been disallowed by Judge Schmetterer, meaning that the reduction is not as voluntary as it appears. F&P should be required to identify specific time entries that it has volunteered to waive so that a determination can be made as to whether those fees have already been disallowed in the RERM Adversary.

**B.    THE FEES REQUESTED WOULD DEPLETE THE DEBTORS' ESTATES AND SHOULD BE DISALLOWED**

21. The aggregate fees and expenses sought by F&P and K&L are troublesome when compared to the limited benefit their respective services provided the Debtors' estates. While approximately $3 million was collected through the efforts of F&P and the Trustee, F&P's legal fees greatly overshadow the benefit to creditors that its services provided. When combined with K&L's questionable fees, it becomes apparent

7

that creditors will receive no distribution from the liquidation of the Debtors' estates or the avoidance actions prosecuted by the Trustee. All of the money recovered by the Debtors' estates will be used to pay professional fees, despite what could have been a sizeable distribution to general unsecured creditors.

22. As has already been pointed out in the objections filed by Shaw Gussis, the Seventh Circuit has been unequivocal that professional fees should not be allowed if they are excessive and unnecessary. In the Matter of: Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995). In these cases where (1) the Trustee filed scores of adversary complaints that yielded no return for the Debtors' estates, (2) any of the funds remaining from asset liquidation or litigation are about to be consumed by the Applicants' fees, (3) the Applicants have failed to comply with the local rules such that it is impossible to determine the reasonableness and necessity of their fees, and (4) the Applicants are seeking compensation which has already been disallowed, cause exists not only to question all of the Applicants' fees, but to disallow some or all of those fees, directing them to disgorge fees already received, so that creditors can receive a distribution.

**[The rest of this page left blank intentionally.]**

WHEREFORE, Behlul Zakiuddin requests that the Court (1) deny the relief requested in the Applications, (2) vacate the Interim Order, and (3) deny further interim or final compensation to the Applicants pending a review of all professional fees sought and paid in the cases.

Respectfully submitted,

Behlul Zakiuddin

By: /s/ Ean L. Kryska
One of his attorneys

Brian M. Graham
Ean L. Kryska
SmithAmundsen LLC
150 N. Michigan Ave.
Suite 3300
Chicago, IL 60601
(312) 894-3200

**CERTIFICATE OF SERVICE**

 The undersigned, an attorney, does hereby certify that he caused true and correct copies of the above and foregoing OBJECTION OF BEHLUL ZAKIUDDIN TO FINAL FEE APPLICATION OF FREEBORN & PETERS LLP AS SPECIAL COUNSEL TO CHAPTER 7 TRUSTEE AND FIRST HOLDBACK FEE APPLICATION OF K&L GATES LLP AS COUNSEL TO THE CHAPTER 7 TRUSTEE to be served on those persons listed on the attached service list by operation of this Court's CM/ECF system on this 16th day of June, 2009.

                /s/ Ean L. Kryska

## SERVICE LIST

**Notice Via CM/ECF System**

- William J. Barrett — william.barrett@bfkn.com
- David R. Brown — dbrown@springerbrown.com, dbrown@ecf.epiqsystems.com
- Marc J. Chalfen — mchalfen@komdr.com
- Michael J. Davis — mdavis@springerbrown.com
- Joseph B. DiRago — jdirago@bellboyd.com
- Patrick L. Edgerton — thor-own@elnet.com
- Thomas R. Fawkes — tfawkes@freebornpeters.com, bkdocketing@freebornpeters.com
- Richard M. Fogel — rfogel@shawgussis.com
- Richard C. Friedman — USTPRegion11.es.ecf@usdoj.gov; richard.c.friedman@usdoj.gov
- Douglas C. Giese — dcgiese@defrees.com
- Joshua D. Greene — jgreene@springerbrown.com, sellis@springerbrown.com
- David L. Kane — dkane@mpslaw.com
- Sonia Kinra — skinra@skcounsel.com, ekraus@skcounsel.com
- Eugene S. Kraus — ekraus@skcounsel.com
- Caren A. Lederer — calederer@golanchristie.com
- Neal H. Levin — nhlevin@freebornpeters.com, bkdocketing@freebornpeters.com
- David M. Madden — dmadden@momlaw.com
- James M. McArdle — jmcardle@skcounsel.com
- Matthew E. McClintock — matthew.mcclintock@klgates.com, teresa.gomez@klgates.com
- James E. Morgan — james.morgan@klgates.com, teresa.gomez@klgates.com
- William T. Neary — USTPRegion11.es.ecf@usdoj.gov
- Jay S. Nelson — jaysconel@earthlink.net
- Sven T. Nylen — sven.nylen@klgates.com, teresa.gomez@klgates.com
- Andre Ordeanu — andre@zanesmith.com, patty@zanesmith.com
- John M. Riccione — jriccione@agdglaw.com
- Edward C. Richard — erichard@manetti-griffith.com
- Scott N. Schreiber — sschreiber@stahlcown.com
- Mark A. Stang — mstang@chuhak.com
- Steven B. Towbin — stowbin@shawgussis.com
- Matthew C. Wasserman — mwasserman@defrees.com
- Ariel Weissberg — ariel@weissberglaw.com, hava@weissberglaw.com
- Daniel A. Zazove — dzazove@perkinscoie.com,

11