# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| POLO BUILDERS, INC., et al., | ) | Joint Case No. 04 B 23758 |
| Debtors. | ) | Hon. Jack B. Schmetterer |
| | ) | |
| DAVID R. BROWN, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary No. 04 A 04032 |
| REAL ESTATE RESOURCE MANAGEMENT, | ) | |
| LLC, BHARAT KOTHARI, and VASILE | ) | |
| SAVA | ) | |
| Defendants. | ) | |

**ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING ATTORNEYS' FEES, COSTS AND EXPENSES**

Polo Builders, Inc. and its affiliated debtors filed voluntary petitions for relief under

Chapter 11 of the Bankruptcy Code. These cases were converted to proceedings under Chapter 7

of the Bankruptcy Code, and David Brown ("Trustee" or "Plaintiff") was appointed by the

United States Trustee to administer the Debtors' bankruptcy estates. The Trustee filed this

Adversary Complaint against Real Estate Resource Management, LLC ("RERM"), Bharat

Kothari ("Kothari") and Vasile Sava ("Sava") (collectively "Defendants"). He sued on a post-

bankruptcy Purchase and Sale Agreement between Plaintiff and RERM ("Agreement").

The Trustee's First Amended Complaint alleged four counts for relief: Count I against

RERM for breach of the Agreement for purchase and sale of 4180 North Marine Drive, Chicago,

Illinois, (commonly known as "Polo Tower") for a price of $16,600,000; Count II for alter ego

liability on the contract, asserted against Kothari; Count III for alter ego liability on the contract,

asserted against Sava; and Count IV for fraud by RERM and Kothari for alleged

misrepresentations and omissions concerning RERM's ability to perform under the contract.

The Trustee sought liquidated damages of $833,000 or, alternatively, actual damages of

$1,005,811.

A two week trial was held. After considering the evidence, including stipulated

evidence, and arguments presented by the parties, Findings of Fact and Conclusions of Law were

entered. Brown v. Real Estate Resource Management, Inc. (In re Polo Builders, Inc.), 04-A-

04032, 2008 WL 2211939 (Bankr. N.D. Ill. Jan. 24, 2008) (Docket No. 340). Pursuant thereto,

RERM was held liable to the Trustee on Count I for breach of contract and actual damages

established in the amount of $150,739.71, plus pre-judgment interest to be calculated to date of

judgment.

A major part of the Trustee's effort was devoted to obtaining a ruling that he was entitled

to recovery of $833,000 under the liquidated damages contract clause, and to hold the individual

defendants Kothari and Sava personally liable. He also sought actual damages of over a million

dollars. Those efforts failed. The liquidated damages clause was held to be unenforceable,

because the Trustee never received the earnest money deposit in valid funds, the amount of

damages established were much less than those sought, and Defendants were found not liable on

Counts II, III, and IV.

The Agreement provided that in a contract drafted between the contracting parties, the

"prevailing party" could recover attorneys' fees, expenses, and costs. Entry of judgment was

reserved so that the parties could brief the issue of who was the "prevailing party" entitled to

recover under that provision. The parties each filed an application for such award. It is agreed that Illinois law applies to the Agreement.

The Trustee now seeks $882,044.90 in attorneys' fees, a number remarkably close to the amount of liquidated damages that he lost. In his original Brief in Support of Attorneys' Fees Award, the Trustee requested $2,278.15 in "expenses," and $20,300 in expert witness "costs." Defendants seek an award of $100,000 which was the amount paid by them to their attorney under a flat fee agreement. Because of the inadequacy of the presentation by Plaintiff, a supplement was ordered from Plaintiff to comply with our Local Rule requirements for major fee applications.

After considering the arguments presented by the parties, Additional Findings of Fact and Conclusions of Law on these issues are hereby made and will be entered as set forth below. Pursuant thereto, Final Judgment will be entered in favor of the Plaintiff-Trustee on Count I for $150,739.71, plus pre-judgment interest of $20.65 per day between October 26, 2004, to date judgment is entered, and awarding the Trustee only $90,000 in attorneys' fees, plus $2,310 for the expert witness expense, plus costs in Count I. Judgment on Counts II through IV will be entered in favor of defendants, Real Estate Resource Management, Inc., Bharat Kothari and Vasile Sava, and Defendant will be denied any award of fees or costs.

Statements of fact contained in the Additional Conclusions of Law below shall constitute Additional Findings of Fact.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court

pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the

United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C.

§ 1409. This issue constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). See In re Ben

Cooper, Inc., 896 F.2d 1394, 1400 (2d Cir. 1990) ("[T]he bankruptcy court has core jurisdiction,

pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered

into post-petition."); In re Elegant Equine, 155 B.R. 189, 191 (Bankr. N.D. Ill. 1993).

### ADDITIONAL CONCLUSIONS OF LAW

#### *Standard for Awarding Attorneys Fees*

Under the "American Rule", parties are generally required to bear their own costs of

litigation. Travelers Cas. & Surety Co. of America v. Pacific Gas & Elec. Co., 127 S. Ct. 1199,

1203 (2007) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)

("the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the

loser.") (additional citations omitted). The rationale behind this rule is that it allows access to

the courts by providing the appropriate incentive for plaintiffs when deciding whether or not to

initiate litigation.

The American Rule is a default rule that can be overcome by statute or by agreement

allocating attorneys' fees between the parties. Id. The Agreement entered into by these parties

and litigated over herein provides in pertinent part:

> In the event of a default by either party of its obligations under this Agreement,
> the prevailing party in any action or proceeding in any court in connection
> therewith shall be entitled to recover from such other party its costs and expenses,
> including reasonable legal fees and associated court costs.

-5-

(Joint Exhibit "JX" 13 ¶ 18(G) at PT000732.)

"[A]n otherwise enforceable contract allocating attorney's fees ... is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." Travelers, 127 S. Ct. at 1203-04 (citing 4 Collier on Bankruptcy ¶ 506.04[3][a] (rev. 15th ed. 2006)).

In interpreting the statutory fee-shifting provision of the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, in Hensley v. Eckerhart, the Supreme Court laid out a twelve factor test for determining the amount of attorneys' fees to be awarded to "prevailing" parties, a test that provides general guidance. 461 U.S. 424, 429-30 (1983) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. at 430 n.3.

The Trustee attempts to distinguish Hensley because that opinion was interpreting a federal civil rights fee-shifting statute, whereas the Agreement here was negotiated and agreed to between two contracting parties and that contract is governed by state law. See Tuf Racing Prods. v. American Suzuki Motor Corp., 223 F.3d 585, 592 (7th Cir. 2000). The Agreement here is indeed governed by a choice of law provision indicating that Illinois law should apply. (JX 13 ¶ 18(K) at PT000732.) However, as Hensley pointed out, the twelve factors came

directly from the ABA Code of Professional Responsibility, Disciplinary Rule 2-106, <u>Hensley</u>, 461 U.S. at 430 n.3, and those standards have substantially been incorporated into Illinois Supreme Court Rules of Professional Conduct, Rule 1.5. Il. S. Ct. R. of Prof. Conduct, RPC Rule 1.5 (West, Westlaw current through Jun. 15, 2008). In addition, some variation in applying those factors are relevant to a bankruptcy judge's determination of the reasonableness of fees requested in bankruptcy pursuant to 11 U.S.C. § 330(a)(2). In <u>Tuf Racing</u>, a Seventh Circuit panel found that even though the parties only cited "cases interpreting federal fee-shifting statutes ... the common-sense principles that guide federal courts in determining attorneys' fees issues would commend themselves to Illinois courts as well." 223 F.3d at 593.

The dispute here over attorneys' fees raises two issues: First, who was the "prevailing party"; and Secondly, how much of that requested was "reasonable and necessary"? The first issue was decided by <u>Hensley</u>: "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. at 433. That ruling in <u>Hensley</u> has implicitly been adopted by Illinois Courts. See <u>Becovic v. City of Chicago</u>, 694 N.E.2d 1044, 1047 (Ill. App. Ct. 1998). Finally, in <u>Tuf Racing Prods.</u>, the Seventh Circuit panel, in interpreting a contractual fee-shifting agreement, relied on "the case law that developed around the issue of what a plaintiff who has won much less than he sought is entitled to an award of attorneys' fees under rules or statutes entitling prevailing parties to 'reasonable' such fees." 223 F.3d at 592. For the foregoing reasons, it is found that the principles governing the award of attorneys' fees on both a statutory and contractual basis and under both federal and state law are sufficiently analogous; therefore, federal and state precedent are both applicable here.

The starting point for answering the second question — whether the requested fees and expenses were reasonable and necessary — "is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The petitioning party has the burden of establishing entitlement to attorneys' fees. Id. at 437; In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987). One way to establish that so-called "lodestar" is to submit documents supporting the hours worked and rates claimed. Hensley, 461 U.S. at 433. However, such evidence only establishes that the hours represented by the billing records were *actually* worked. Pettibone Corp., 74 B.R. at 301. In this case the Chapter 7 Trustee's original Brief in Support of Attorneys' Fee Award was accompanied by detailed billing records from October 2004 through February 2008 that were approximately three inches thick. That submission lacked a clear narrative explaining the tasks performed in the litigation and the lodestar for work on each task. He clearly expected the judge and staff to figure that out by digesting the thick list of time entries and time sheets on which he indicated with bracket entries were that to be considered.

To assist judges of our Bankruptcy Court in evaluating large and complex fee applications, the District Court for the Northern District of Illinois long ago promulgated, at our request, Local Bankruptcy Rule 5082-1, which governs Applications for Compensation and Reimbursement for Professional Services in Cases Under Chapter 7, 11 and 12. According to Rule 5082-1:

### A. Applications

Each application for interim or final compensation for services performed and reimbursement of expenses incurred by a professional person employed in a case filed under Chapter 7, 11 or 12 of the Bankruptcy Code shall begin with a completed and signed cover sheet in a form approved by the court and published

-8-

by the clerk. The application shall also include both a narrative summary and a detailed statement of the applicant's services for which compensation is sought.

## B. Narrative Summary

(1) The narrative summary shall set forth the following for the period covered by the application:

(a) a summary list of all principal activities of the applicant, giving the total compensation requested in connection with each such activity;

(b) a separate description of each of the applicant's principal activities, including details as to individual tasks performed within such activity, and a description sufficient to demonstrate to the court that each task and activity is compensable in the amount sought;

© a statement of all time and total compensation sought in the application for preparation of the current or any prior application by that applicant for compensation;

(d) the name and position (partner, associate, paralegal, etc.) of each person who performed work on each task and activity, the approximate hours worked, and the total compensation sought for each person's work on each such separate task and activity;

(e) the hourly rate for each professional and paraprofessional for whom compensation is requested, with the total number of hours expended by each person and the total compensation sought for each;

(f) a statement of the compensation previously sought and allowed;

(g) the total amount of expenses for which reimbursement is sought, supported by a statement of those expenses, including any additional charges added to the actual cost to the applicant.

(2) The narrative summary shall conclude with a statement as to whether the requested fees and expenses are sought to be merely allowed or both allowed and paid. If the latter, the narrative summary shall state the source of the proposed payment.

## C. Detailed Statement of Services

The applicant's detailed time records may constitute the detailed statement required by Fed. R. Bankr. P. 2016(a). Such statement shall be divided by task and activity to match those set forth in the narrative description. Each time entry shall state:

(1) the date the work was performed,

(2) the name of the person performing the work,

(3) a brief statement of the nature of the work, and

(4) the time expended on the work in increments of tenth of an hour.

**E. Failure to Comply**

> Failure to comply with any part of this Rule may result in reduction of fees and
> expenses allowed. If a revised application is made necessary because of any
> failure to comply with provisions of this Rule, compensation may be denied or
> reduced for preparation of the revision. The court may also excuse or modify any
> of the requirements of this Rule.

While a Detailed Statement of Services represented by billing records establishes in the absence

of objection that the requested fees were actually incurred, the Narrative Summary establishes

the "how" and "why" and should show the useful results. The Narrative might therefore support

a contention that the requested fees were reasonable, necessary, and valuable. <u>Pettibone Corp.</u>,

74 B.R. at 301.

Although this is not a traditional fee application because any awarded attorneys' fees will

not be paid out of the bankruptcy estate, similar considerations militate against the court acting

as a rubberstamp for either party's request. In other words, while attorneys seeking fees

pursuant to a fee-shifting agreement:

> [A]re entitled to an award of fees for all time reasonably expended in pursuit of
> the ultimate result achieve in the same manner that an attorney traditionally is
> compensated by a fee-paying client for all time reasonably expended on a matter
> ... [h]ours that are not properly billed to one's *client* also are not properly billed to
> one's *adversary* pursuant to [a fee-shifting agreement].

<u>Hensley</u>, 461 U.S. at 431-434.

As mentioned above, detailed billing records attached as exhibits to the Trustee's original

brief were approximately three inches thick. In response, Defendants argued that they were the

prevailing parties, and generally objected to the Trustee's fee request as unreasonable. They

correctly argued that "[b]ased on the exhibits submitted, there is no way for the court to make

this determination" of reasonableness. (Defendants' Response at 5.) However, Defendants'

-10-

counsel did not point to a single time entry that he contended was unreasonable or unnecessary.

Therefore, on February 27. 2008 and April 8, 2008, the Court entered Orders setting a

supplemental briefing schedule whereby the Trustee was ordered to comply with Rule 5082-1.

and Defendants' were ordered to provide any specific objections to the Trustee's requested time

entries.

### *Standard for Awarding Expenses and Costs*

According to Rule 7054(b) Fed. R. Bankr. P., "The court may allow costs to the

prevailing party except when a statute of the United States or these rules otherwise provides."

Rule 7054(b) provides a strong presumption in favor of awarding statutory costs to the prevailing

party. Perlman, 185 F.3d at 858. "Costs" is a term of art, and recoverable costs are listed in 28

U.S.C. § 1920. "Courts may not award costs not authorized by statute." Canal Barge Co.. 2003

WL 1908023, at *1.

In his original Brief, the Trustee requested $2,278.15 in "expenses." It is impossible to

determine whether this amount is for statutory costs or some other expenses claimed under the

agreement clause earlier quoted because the Trustee does not provide an itemized explanation of

these amounts. The terms "costs" and "expenses" as used by the Trustee are not

interchangeable. If that amount represents "expenses," the Trustee's request is denied, because it

is impossible to determine the reasonableness and necessity of that amount without an itemized

explanation. However, the Trustee will be given time after Final Judgment on Count I is entered

to file a Bill of Costs on that Count. Therefore, to the extent that this $2,278.15 represents

properly taxable costs, ruling is reserved until such time as the Trustee submits his Bill of Costs.

The only category of "expenses" specifically requested by the Trustee as prevailing party under the Agreement is "Expert Witness Costs." According to 28 U.S.C. § 1920, "A judge or clerk of any court of the United States may tax as costs the following: Fees and disbursements for printing and witnesses...." Absent a contrary statutory provision, expert witness costs are subject to the per diem subsistence and mileage limitations of 28 U.S.C. § 1821. The Trustee's request for "Expert Witness Costs" far exceeds these limitations and, therefore, it is likely that the Trustee was not using "costs" as a statutory term, but to describe the fees paid to his expert witness who testified at trial. Therefore, this request is treated as "expenses" sought as prevailing party under the Agreement.

The Trustee does not offer any authority, other than conclusory statements, that "expenses" recoverable under the Agreement can include expert witness fees. Under Illinois law, when given its ordinary meaning, the term "expenses" includes expert witness fees. In J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship, 757 N.E. 2d 1271, 1280 (Ill. App. Ct. 2001), the court reasoned that the term expenses as used in the discovery process, condemnation proceedings, and ethical rules governing the relationship between attorney and client, specifically contemplate expert witness fees and, therefore, should be given the same meaning in contract interpretation. Id. at 1279-80. In addition, awarding expert witness fees is consistent with the theory of compensatory damages, which is to put the non-breach party in the position had the contract been performed.

Having found that expert witness fees are recoverable as expenses, the standard for awarding fees is the same as attorneys' fees; those which are reasonably necessary. Id. at 1281.

And since "reasonably necessary" services and expenses might have value to be warranted, the value of services and expenses sought must be shown.

### *The Trustee is the Prevailing Party*

Here, both parties claim to be the prevailing party. The Trustee argues that he is the prevailing party because Defendants were found liable on Count I for breach of contract and proved actual damages in the amount of $150,739.51. Defendants argue that they are prevailing parties because they successfully defended against three of the four counts, and the Trustee recovered none of the $833,000 claimed as liquidated damages and only a small part of the $1,005,811 claimed as actual damages.

Under Hensley, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. at 433. See also Med+Plus Neck and Back Pain Ctr. v. Noffsinger, 726 N.E.2d 687, 694 (Ill. App. Ct. 2000). This requires a two part analysis. "First, did the plaintiff prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 434.

To answer the first question, one must look at the language of the Agreement itself. The fee-shifting provision provided that the "prevailing party" may recover attorneys' fees in any action or proceeding in any court "in event of a default by either party of its obligations under the Agreement. . .." (See JX 13 ¶ 18(G) at PT000732.) In other words, the "prevailing party," can only recover fees and expenses arising from successful suit for breach of contract.

Defendants cite <u>Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.</u> for the proposition that

"[i]f a fraud claim arises 'under [a] contract,' then it may be connected with or arise from a

breach of contract ...." 99-C-7049, 2004 WL 1899882, at *3 (N.D. Ill. Aug. 12, 2004), and,

therefore, they claim attorneys' fees for successfully defending against Count IV brought for

fraud alleged against RERM and Kothari. Even though it might be argued that Count IV for

fraud arose out of events involving the Agreement, it is not necessary to decide that issue,

because "[a] prevailing defendant may recover an attorney's fee only where the suit was

vexatious, frivolous, or brought to harass or embarrass the defendant." <u>Hensley</u>, 461 U.S. at 429

n.2. The allegations in Count IV were found to be without merit for reasons earlier decided, but

it was not vexatious, frivolous, or brought merely to harass or embarrass the Defendants. Thus,

Defendants cannot be found to be "prevailing parties" on Count IV.

The Trustee has represented to the Court that his fee application only represents hours for

work performed on Count I, and that his counsel has used "billing judgment" to eliminate work

relating to the other counts on which he did not prevail. Despite repeatedly being asked to

comment on particular parts of the Trustee's fee application or particular time entries,

Defendants never did so and it must be assumed that they found no entries relating to other

counts. Therefore, the Trustee fee application is treated as related only to his work on Count I.

The question remains as to whether or not the Trustee achieved a level of success to

justify his request to be treated as "prevailing party." Defendants cite <u>Perlman v. Zell</u>, 185 F.3d

850, 859 (7th Cir. 1999) for the proposition that "a litigant who wins less than 10% of his initial

demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated

*as if* he had not prevailed," and argues that the Trustee's allowed damages are only slightly more

than this ten percent threshold. This argument is flawed for several reasons. First, the Trustee

sought alternative relief in the form of liquidated damages in the amount of $833,000, or actual

damages of $1,005,811 if the liquidated damages clause was found to be unenforceable. The

Trustee was awarded approximately fifteen percent of the actual damages prayed for, but

approximately eighteen percent of his prayer for relief measured against the liquidated damages

sought. In Canal Barge Co. v. Commonwealth Edison Co., the opinion found that the counter-

plaintiff was the prevailing party when it won eleven percent of the amount it requested. 98-C-

0509, 2003 WL 1908023, at *1 (N.D. Ill. Apr. 18, 2003). If recovery of eleven percent of one's

requested relief is sufficient to be considered a prevailing party, then fifteen to eighteen percent

is also sufficient.

One might ask what difference the percentage of recovery should make. Use of such a

standard for analysis suggests some arbitrariness in a rule that uses ten percent as the threshold

for being a "prevailing party." The Seventh Circuit panel in Tuf Racing Prods. suggested as

much when it pointed out that precedents treat the ten percent rule "merely as a factor to

consider along with other factors weighing for or against an award of attorneys' fees." 223 F.3d

at 592 (additional citations omitted). Nevertheless, "[s]ince a defendant must take seriously a

large demand and prepare its defense accordingly, it is right to penalize a plaintiff for putting the

defendant to the bother of defending against a much larger claim than the plaintiff could prove."

Id.

It is relevant but not dispositive of the question of whether or not the Trustee is a

prevailing party to note that his claimed fee far exceeds the damages he will be awarded. See id.

According to the Seventh Circuit panel in Tuf Racing Prods., "Because the cost of litigating a

claim has a fixed component, a reasonable attorney's fee in the sense of the minimum required to establish a valid claim can exceed the value of the claim." Id. (citing Hyde v. Small. 123 F.3d 583, 584-85 (7th Cir. 1997)).

Whether measured purely by dollars awarded or as a percentage of the prayed for relief, the Trustee succeeded on a significant issue, and achieved some benefit in filing the Adversary and trying it to judgment with some material success so that he must be considered the prevailing party for purposes of the fee-shifting provision of the Agreement. Count I for breach of contract presented the significant issue upon which liability rested. Counts II through IV for alter ego liability against Kothari and Sava, and fraud by RERM and Kothari were collateral claims in an attempt to establish personal liability against Kothari and Sava and perhaps reach "deep pockets" to enable collection. Nonetheless, an award of $150,739.17 in damages on Count I provides a basis for the award of some attorneys' fees and expenses under the prevailing party standard.

### The Trustee's Requested Attorneys' Fees Have Not Been Shown to be Necessary, Reasonable, or Valuable to Extent Requested

Defendants object to the reasonableness of the Trustee's requested attorneys' fees on the basis that it is impossible to make determination of reasonableness based on the records and fee application submitted by the Trustee. The Detailed Statement of Services submitted by the Trustee in support of his fee request cover a three and one-half year time period from October 2004 to February 2008, and was approximately three inches thick. His detailed billing records establish that the requested fees are for hours actually worked, but they do not establish what work they relate to or that they were reasonable, or valuable. The Trustee's counsel bracketed various entries and left it to the Judge to collate those entries into a coherent narrative. At the same time, Defendants' generalized objection to reasonableness is insufficient to sustain an

objection to requested fees. Defendants were apparently unwilling or unable to take the time to conduct a detailed analysis as to why specific time entries were unreasonable despite two opportunities to do so. There is no doubt that this is a burdensome process, which both parties apparently expected the Judge to do for them. This is not the job of the Judge, who is neither a rubberstamp for the Trustee, nor a proxy for work that should have been done by a paralegal or associate on behalf of Defendants. An attorney seeking a large fee owes the court a coherent statement of the work done, the necessity for the work and its reasonableness and value in light of the results achieved. That is why Plaintiff was ordered under Local Rule 5082-1 to file a supplement. What Plaintiff filed in response still did not set forth a narrative as to different tasks performed and a lodestar of fees for each task.

The standard that the fee application and supplement did not help the court to analyze is the same as for fees billed to one's client or a bankruptcy estate, because "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*...." Hensley, 461 U.S. at 434.

Here, the Trustee's requested fees will be reduced for several reasons. First, the Trustee failed to comply with the Court's Order to comply with the requirements of Local Rule 5082-1, despite being given two opportunities and an extension of time in order to do so. The detailed billing records appended to the Trustee's Original Brief satisfy the requirement of Rule 5082-1(C) to provide a Detailed Statement of Services. However, the Trustee never complied with the requirements of Rule 5082-1(B) to provide a Narrative Summary of the tasks performed and the fees sought for each task. Pages seven through thirty of the Trustee's Fee Application comply with Rule 5082-1(B)(c) and (e) by setting out the billing rate and hours worked for each

professional or paraprofessional, including for time spent preparing the fee application, but

otherwise it does not comply with the Rule. The following is a brief excerpt of the Trustee's Fee

Application:

> Additional legal fees and costs were then incurred in connection with litigating
> the RERM Adversary and taking the necessary actions to establish that the
> Defendants' breach the Purchase and Sale Agreement at trial. These fees and
> expenses accrued through the conclusion of trial, and in fact, through and
> including the drafting of the instant Application.
>
> As in any litigation, these fees and expenses related to, among other things, oral
> and written discovery (including expert discovery), legal research on a variety of
> issues that arose in connection with proving that the Defendants breached the
> Purchase and Sale Agreement, the drafting of briefs and pleadings on a variety of
> important legal issues, preparing summary judgment motions and other pleadings,
> responding to summary judgment motions and a multitude of other pleadings filed
> by the Defendants, engaging in negotiations with opposing counsel, preparing for
> and attending Court hearings, and otherwise working to move the case forward
> and prove breach of contract....

(Trustee's Fee Application at 31-32.) This narrative comes close to complying with Rule 5082-

1(B)(a), which requires "a summary list of all principal activities of the applicant ..." but it fails

to "giv[e] the total compensation requested in connection with each such activity."

In addition, Rule 5082-(B)(b) requires the Narrative Summary to include "a separate

description of each of the applicant's principal activities, including details as to individual tasks

performed within such activity, and a description sufficient to demonstrate to the court that each

task and activity is compensable in the amount sought."

The Trustee repeatedly argued that all the requested fees relate only to Count I of the suit

and, therefore, all work was performed on only one task or activity. However, the narrative

submitted by the Trustee refers to at least seven categories of work, including discovery, legal

research, the drafting of briefs and pleadings, preparing summary judgment motions, responding

to summary judgment motions and other pleadings filed by Defendants, engaging in negotiations with opposing counsel, and preparing for and attending court hearings and trial work. The Trustee's laundry list of activities demonstrates that he understands that the litigation on Count I did not constitute only one task. However, his generalized descriptions of these activities are insufficient to establish reasonableness and necessity. Rather:

> The narrative should ... contain a statement explaining the significance of each activity or project of professional service for which compensation is sought, as well as an explanation of the purpose, necessity and appropriateness of each such service; a statement of the effectiveness of each activity, a statement of what alternatives were considered by the attorney together with the method of analysis relied upon for choosing the action taken; a statement of any difficult or unusual problems which arose in the case and the manner in which they were addressed.

See Pettibone, 74 B.R. at 505.

Work falling under the heading of legal research provides one example of how generalized descriptions provide an opportunity for abuse in billing. Counsel are presumed to be experienced enough to have an adequate background in the applicable law. While it is recognized that particular questions requiring research will arise from time to time, no fees will usually be allowed for general research on law subjects which are well known to practitioners in the area involved. Here, for example, the parties were asked to submit trial briefs regarding specific legal issues, including the validity of the liquidated damages clause in the Agreement (a major issue on which Plaintiff lost). However, the Trustee's narrative does not provide any basis for determining what entries under the heading of "legal research" are compensable, and which, if any, are not permissible as routine.

Moreover, it was found and held that the Trustee was unable to recover the earnest money down payment as liquidated damages under Illinois law, because it never received those

-19-

monies in valid funds. Therefore, even if legal research on the subject was necessary, an explanation of the effectiveness and alternatives considered is also required to show why research into a losing issue should be charged to Defendants now. The Trustee failed to provide this narrative explanation in his fee application and, therefore, the reasonableness and necessity of these claimed fees cannot be determined. That is true for fees sought for work on other tasks as well.

Further, it cannot be determined on this record whether the Trustee exercised business judgment in pursuing this litigation in Count I against a defendant with doubtful assets to the tune of a requested $882,044.90 in attorneys' fees. While the fact that the requested attorneys' fees are more than five times the actual damages awarded is not dispositive of the question of who is the prevailing party, it is a factor to be considered in determining the reasonableness of requested fees. The decision whether or not to pursue any claim in litigation involves a cost-benefit analysis: Do the costs of litigation, including attorneys' fees, exceed the potential recovery? The best guarantee of reasonableness is willingness of the party incurring the attorneys' fees to pay them without any guarantee of reimbursement. Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996). "Except in grudge litigation, no client, however wealthy, pays a lawyer more than a dollar to pursue a dollar's worth of recovery." Kirchoff, 786 F.2d at 325.

One problem with second-guessing the Trustee's decision to pursue this Adversary is that hindsight is always twenty-twenty. See id. However, "[s]ince a defendant must take seriously a large demand and prepare its defense accordingly, it is right to penalize a plaintiff for putting the defendant to the bother of defending against a much larger claim than the plaintiff could prove."

Tuf Racing Prods., 223 F.3d at 592. A party may only recover attorneys' fees "that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly." Id.

### *The Trustee Lacked Basis to Believe that RERM is More Than a Shell Company*

In addition to a reasonable valuation of one's claim, a plaintiff must also consider the probability of actually recovering a judgment in weighing the costs and benefits of pursuing litigation. Obtaining a judgment is not necessarily the end of litigation, and the rules of procedure provide for supplementary proceedings for enforcing the judgment. Here, it has been found and held that RERM was likely a shell company without much in assets. As earlier found, the Trustee's sales agent made the amazing admission that he did not conduct any due diligence concerning RERM's ability to consummate the transaction, despite having responsibility to do so. Therefore, the Trustee and his counsel knew when he initiated this Adversary that he would find it difficult to collect any judgment in his favor. That is likely one reason that he included additional counts for alter ego liability and fraud against the individual defendants, Kothari and Sava.

### *The Trustee's Requested Fee Will be*
### *Reduced to Sixty Percent of Actual Damages Awarded*

There is no precise rule for reducing a requested attorneys' fee. Hensley, 461 U.S. at 436. However, "[a] reduced fee is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440. The trial court may attempt to identify specific hours as unreasonable and unnecessary, or may simply reduce the award to account for the limited success. Id. at 436-437. Because of Plaintiff's unwillingness to provide a Narrative Statement in compliance with Local Rule 5082-1(B), it is unreasonable to expect the

Court to comb through the billing records and eliminate specific time entries. Therefore, the
Trustee's requested fees will be reduced to account for his limited success.

It is found and held that the Trustee's attorneys did work and seek fees disproportionate
to a reasonable estimate of the value of the claim. See Tuf Racing Prods., 223 F.3d at 592. Even
accounting for puffing in the complaint, the Trustee's estimate of actual damages based on Mr.
Hausmann's report was not supported by the evidence, and was extravagant and unreasonable.
Therefore, the Trustee's requested fees will be reduced to "the amount that would have been
reasonable to incur had the value of the claim been estimated reasonably rather than
extravagantly." Id. In deciding to reduce a requested fee, the trial court should take into account
"the relationship between the amount of the fee awarded and the results obtained." Hensley, 461
U.S. at 437. Here, the Trustee was awarded $150,739.17 in actual damages on Count I for
breach of contract, and his requested attorneys' fee will be reduced to sixty percent of that
amount, or $90,000.

*The Expert's Valuation Opinion Did Not Reasonably*
*Estimate the Value of the Claim and His Fees Are Not Fully Reasonable*

The Trustee includes a request for $20,300 in expert witness fees for the services of John
Hausmann. It is necessary to comment on the opinion rendered by Mr. Hausmann in considering
the proper and reasonable compensation for the Trustee's expert witness fees to be added on to
the Count I judgment.

In his pre-trial Proposed Findings of Fact and Conclusions of Law, the Trustee requested
$833,000 in liquidated damages or, in the alternative if the liquidated damages clause was held
to be unenforceable, $1,005,811 in actual damages. The figure sought for actual damages was
derived from the expert report of Mr. Hausmann. However, $203,840 of that was for *estimated*

"Third Party Carrying Costs", attributable primarily to attorneys' fees, was immediately

subtracted from Mr. Hausmann's analysis, because he is not an expert in attorneys' fees and had

no personal knowledge of the actual fees or work involved in this case. In addition, it was found

and held that Mr. Hausmann's expert report and testimony contained numerous factual errors

concerning the Addendums to the Toulabi Agreement and proration of facade costs that were not

supported by the evidence. For reasons stated in the original Findings and Conclusions, the

evidence did not support $855,071.30 of the total damages opined to by Mr. Hausmann. It was

thus found and held that Mr. Hausmann's expert opinion did not give a reasonable estimate of

the value of the Trustee's claim. Rather, Mr. Hausmann took a litigation-centric approach in

order to justify the Trustee's legal position that the amount set as liquidated damages was a

reasonable approximation of actual damages and not an unenforceable penalty. Mr. Hausmann's

opinion in that regard was not reliable, and the Trustee's request for award of Hausmann's

expenses as part of the Count I judgment must be adjusted to reflect an "amount that would have

been reasonable to incur had the value of the claim been estimated reasonably rather than

extravagantly." Tuf Racing Prods., 223 F.3d at 592.

"[T]he test for whether fees of an expert witness are to be paid is not based on the merit

of the courtroom testimony, but on the value of his services in the course of conducting

litigation." J.B. Esker & Sons, 757 N.E.2d at 1281. For foregoing reasons, it is found and held

that Mr. Hausmann's conclusions as to actual damages were not credible and therefore his

opinion  lacked value to the trial presentation. There is no guarantee that it would have taken

less time and, therefore, cost the Trustee less for Mr. Hausmann to provide a better reasoned and

more reliable opinion. On the other hand, Mr. Hausmann's extravagant opinion of actual

-23-

damages drove the Trustee's decision to continue incurring attorneys' fees beyond a reasonable valuation of the claim. The Trustee's entire litigation strategy, including his decision whether or not to settle the litigation, might have been different but for the extravagant valuation of the claim based on Mr. Hausmann's opinion.

For the foregoing reasons, the Plaintiff's claim of expenses for Mr. Hausmann's expert witness fee will be reduced.

### The Expert Witness Fee Will be Reduced by Eighty Percent

In his original Brief, the Trustee requested $20,300 in expert witness fees for the services performed by John Hausmann. Defendants had previously paid $1,750 to secure Mr. Hausmann's appearance at a deposition.

For the reasons stated above, Mr. Hausmann's expert opinion contained a number of factual and procedural errors and, therefore, was not credible. Rather than being an unbiased assessment of the facts, he used an approach to justify the Trustee's theory of liquidated damages. In light of the unreasonable attorneys' fees the Trustee continued to incur as a result of Mr. Hausmann's extravagant estimation of the value of the claim, the value of his services in the course of conducting litigation was minimal. For the foregoing reasons, the Trustee's requested expert witness expense of $20,300 will be reduced by eighty percent, or down to $4,060. From that must be deducted $1,750 already paid by Defendants. The balance of $2,310 will be allowed as part of the judgment.

### CONCLUSION

In the Court's Order dated April 8, 2008, ordering Plaintiff to supplement his fee request in accord with Rule 5082-1, the Trustee was put on notice that "Part F of that Rule [5082-1] will

apply in the event of failure to comply." According to Rule 5082-1(F), "Failure to comply with any part of this Rule may result in reduction of fees and expenses allowed."

It is found and held that the amount of fees requested by the Trustee does not reflect a reasonable estimate or measure of the value of the claim for breach of contract. The Trustee's relatively strong position when it came to establishing liability on Count I for breach of contract clouded his judgment regarding his theory of damages and ability to actually recover any judgment. The amount of time spent trying to prove damages was certainly not reasonable in light of the results achieved and actual damages established. The reasonableness, necessity, and value of work done for which large fees are requested has not been shown to be justified because of the Trustee's failure to comply with Local Bankruptcy Rule 5082-1(B). Pursuant to Rule 5082-1(F) the Trustee's request for attorneys' fees will be reduced for failure to comply with the Rule, and also because the Application as supplemented does not support the huge award requested.

For the forgoing reasons, the Final Judgment Order will be entered awarding the Trustee the damages of $150,739.71 on Count I as earlier announced, plus pre-judgment interest from October 26, 2004, to date of judgment at $20.65 per day, plus attorneys fees in the amount of

sixty percent of the damages to be awarded on Count I, or $90,000, plus expert witness expense of $2,310.  In addition, Plaintiff may recover statutory costs on Count I; such costs may be taxed when a Bill of Costs is filed and noticed for ruling after judgment is entered.

ENTERED:

_____

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 23rd day of July 2008.