**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | No. 04 B 23758 |
| POLO BUILDERS, INC., *et al.*, | ) | (Jointly Administered) |
| | ) | Hon. A. Benjamin Goldgar |
| Debtors. | ) | Hearing Date:   July 18, 2012 |
| | ) | Hearing Time:   9:30 a.m. |

**NOTICE OF MOTION**

TO:   See Attached Service List

**PLEASE TAKE NOTICE** that on **July 18, 2012 at 9:30 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable A. Benjamin Goldgar** in Courtroom 613 of the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, or in his absence, before such other Judge who may be sitting in his place and stead and hearing bankruptcy motions, and shall then and there present **Motion Of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC For Scheduling Order And Related Relief As To Final Applications For Compensation And Expenses By The Attorneys For The Trustee,** a copy of which is attached and herewith served upon you, and shall request for the entry of an order in conformity with that motion.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

> Steven B. Towbin (#2848546)
> Richard M. Fogel (#3127114)
> Shaw Gussis Fishman Glantz
>   Wolfson & Towbin LLC
> 321 North Clark Street, Suite 800
> Chicago, Illinois 60654
> (312) 541-0151  telephone
> (312) 980-3888  facsimile

**CERTIFICATE OF SERVICE**

Steven B. Towbin certifies that he caused to be served a true copy of the above and foregoing notice and attached pleadings upon the attached Electronic Mail Notice List through the ECF System which sent notification of such filing via electronic means on July 13, 2012.

> /s/ Steven B. Towbin

# Mailing Information for Case 04-23758

**Electronic Mail Notice List** (Via ECF System)

- Jonathan E Aberman   jaberman@vedderprice.com, ecfdocket@vedderprice.com
- Jayal Amin   jamin@chawlagroup.com
- Nizam Arain   arain@lakeshorelawgroup.com
- Amy A Aronson   amyaronson@comcast.net, amyaronson@comcast.net
- William J. Barrett   william.barrett@bfkn.com
- Edric S Bautista   ebautista@sanchezdh.com
- Thomas P. Beyer   tbeyer@beyerlawoffice.com
- David R Brown   dbrown@springerbrown.com, dbrown@ecf.epiqsystems.com;jill@springerbrown.com
- David R Brown   dbrown@springerbrown.com, marigonzo@springerbrown.com;jill@springerbrown.com
- David R Brown   drbrownmail@comcast.net, marigonzo@springerbrown.com;jill@springerbrown.com
- Sarah H Bryan   sarah.bryan@klgates.com
- Edmond M Burke   eburke@chuhak.com, tbarbeauld@chuhak.com
- Paul Caghan   caghan@ameritech.net
- Marc J. Chalfen   mchalfen@komdr.com
- Scott R Clar   sclar@craneheyman.com, mjoberhausen@craneheyman.com;asimon@craneheyman.com
- Timothy C. Culbertson   tcculb@yahoo.com, tcculb@gmail.com
- Lawrence J. Czepiel   ljcz@msn.com
- David R. Brown not individually but solely as chapter 7 trustee of Polo Builders, Inc.    , dbrown@ecf.epiqsystems.com;jill@springerbrown.com
- Michael J. Davis   mdavis@springerbrown.com, davislaw80@gmail.com
- Vipul A Desai   author@proofofpayments.com, davidmsiegel@hotmail.com;vdesai@davidmsiegel.com
- Joseph B DiRago   jdirago@lockelord.com
- Kenneth K Ditkowsky   kenditkowsky@yahoo.com
- Brian M. Dougherty   bmd@gsrnh.com, kam@gsrnh.com
- Robert M Dreger   RDreger@dregerlaw.com
- Patrick L. Edgerton   thor-own@elnet.com
- Devon J Eggert   deggert@freebornpeters.com, bkdocketing@freebornpeters.com
- Michael M. Eidelman   meidelman@vedderprice.com, ecfdocket@vedderprice.com
- Thomas R. Fawkes   tfawkes@freebornpeters.com, bkdocketing@freebornpeters.com
- Cynthia G. Feeley   feeleypc@aol.com
- Daniel M. Feeney   dfeeney@millershakman.com, tlawhead@millershakman.com
- Eric P. Ferleger   eferleger@ferlegerlaw.com, cfernandez@ferlegerlaw.com
- Michael L Flynn   jenmesick@sbcglobal.net
- Richard M Fogel   rfogel@shawgussis.com
- Nicole Frankel   nfrankel@vedderprice.com, ecfdocket@vedderprice.com
- Richard C Friedman   rcfwilmette@gmail.com

- Sheryl A Fyock    sfyock@llflegal.com
- Douglas C. Giese    dcg@h2law.com, dcgiese@hotmail.com
- Harley J. Goldstein    harleyg@restructuringshop.com
- Joshua D Greene    jgreene@springerbrown.com, sellis@springerbrown.com
- David E Grochocinski    lawyers@innovalaw.com, lawyers@innovalaw.com
- William S Hackney    whackney@salawus.com, jadams@salawus.com
- Christopher J Hales    chales@bbp-chicago.com
- Christopher J Hales    chales@springerbrown.com
- Fred R Harbecke    fredrharbecke@sbcglobal.net
- Steven M Hartmann    shartmann@freebornpeters.com, bkdocketing@freebornpeters.com;awiley@freebornpeters.com
- David H Hixson    dhixson@jenner.com, mmatlock@jenner.com
- David L Kane    dkane@mpslaw.com, dnichols@mpslaw.com;mpslawllc@gmail.com;jlitwin@mpslaw.com
- Sonia Kinra    skinra@skcounsel.com, ekraus@skcounsel.com
- Frank Kladis    fkladis@rfd-law.com
- Eugene S. Kraus    ekraus@skcounsel.com
- Ean L Kryska    ekryska@salawus.com, jadams@salawus.com
- Kurt G Larsen    kurt4law@yahoo.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Caren A Lederer    calederer@golanchristie.com
- Mark E Leipold    mleipold@gouldratner.com, stamssot@gouldratner.com;hmartinez@gouldratner.com
- Neal H Levin    nhlevin@freebornpeters.com, kpaige@freebornpeters.com,;bkdocketing@freebornpeters.com
- Julie M Levy    jlevy@defrees.com
- Mitchell Lieberman    mlieberman@noonanandlieberman.com, igarza@noonanandlieberman.com;sneedham@noonanandlieberman.com;ccocanig@noonanandlieberman.com
- Matthew Luzadder    mluzadder@kelleydrye.com, BankruptcyDepartment2@KelleyDrye.com;kkleist@kelleydrye.com
- David M Madden    dmadden@momlaw.com
- Joseph L Matz    jmatz@kr-law.com
- James M McArdle    jmcardle@skcounsel.com
- Matthew E. McClintock    mattm@restructuringshop.com, laurent@restructuringshop.com;amritk@restructuringshop.com;teresag@restructuringshop.com;harleyg@restructuringshop.com
- Michael D Messersmith    mmessersmith@kayescholer.com, keanderson@kayescholer.com;jben@kayescholer.com
- James E. Morgan    jmorgan@enterpriselg.com, somh777@yahoo.com
- Jay S. Nelson    jaysconel@earthlink.net
- Lauren Newman    lnewman@thompsoncoburn.com, lnewman@thompsoncoburn.com;dmannella@thompsonccoburn.com
- Sven T Nylen    sven.nylen@klgates.com, teresa.gomez@klgates.com

{4702 MOT A0322130.DOC}

- Andre Ordeanu andre@zanesmith.com, Patty@Zanesmith.com;Kelly@Zanesmith.com;Zane@Zanesmith.com;Nichole@Zanesmith.com
- Lester A Ottenheimer, III lottenheimer@otrlaw.com, nfishkin@otrlaw.com
- Mark Page mpage@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.com;BankruptcyDepartment@Kelleydrye.com
- Kavita M Patel kpatel@schiffhardin.com
- Roger J. Perlstadt rperlstadt@millershakman.com, tlawhead@millershakman.com
- J. Matthew Pfeiffer mpfeiffer@frltd.com
- Ann E Pille ann.pille@dlapiper.com, apille@reedsmith.com
- John M. Riccione jriccione@agdglaw.com
- Edward C. Richard erichard@manetti-griffith.com
- Gerard D. Ring gring@burkelaw.com
- Mark J Rose mjroseesq@aol.com
- Harold Rosen hrosen@wolinlaw.com, lmategrano@wolinlaw.com
- Brian J Russell BrianR@daileylawyers.com
- Scott N. Schreiber sschreiber@stahlcowen.com
- Julian Solotorovsky jsolotorovsky@kelleydrye.com
- Mark A Stang mstang@chuhak.com
- Catherine L Steege csteege@jenner.com, docketing@jenner.com;mmatlock@jenner.com
- Roberto T. Tirona bob@tironalaw.com
- L. Judson Todhunter JTodhunter@howardandhoward.com
- Steven B Towbin stowbin@shawgussis.com
- Matthew C Wasserman mwasserman@defrees.com
- Ariel Weissberg ariel@weissberglaw.com, Hava@weissberglaw.com;mike@weissberglaw.com;victor@weissberglaw.com;john@weissberglaw.com
- Daniel A Zazove docketchi@perkinscoie.com

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | No. 04 B 23758 |
| POLO BUILDERS, INC., *et al.*, | ) | (Jointly Administered) |
| | ) | Hon. A. Benjamin Goldgar |
| Debtors. | ) | Hearing Date:    July 18, 2012 |
| | ) | Hearing Time:    9:30 a.m. |

**MOTION OF SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN LLC FOR SCHEDULING ORDER AND RELATED RELIEF AS TO FINAL APPLICATIONS FOR COMPENSATION AND EXPENSES BY THE ATTORNEYS FOR THE TRUSTEE**

The law firm of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC ("Shaw Gussis"), a creditor holding allowed chapter 11 administrative expense claims against each of the four jointly administered estates, moves this Court pursuant to 11 U.S.C. § 105(a) and the Court's inherent authority to control its docket, fix dates for papers to be filed and for hearings to be conducted, for the entry of an order that:

(a)  fixes a date by which David R. Brown, the chapter 7 trustee for these jointly administered cases (the "Trustee"), must file his final report and account in each of these jointly administered cases, together with the Trustee's applications for final compensation as to each chapter 7 estate;

(b)  determines whether the pending applications for final fees and expenses (each, an "Application," and together, the "Applications") filed by the three separate law firms representing the Trustee comply with the requirements of 11 U.S.C. § 330, Bankruptcy Rule 2016 and Local Rule 5082-1, or whether the Applications must be stricken and refiled or amended to comply with the statute and rules so as to provide creditors and this Court with information in a useable and cogent format so that the Court may make an informed judgment as to the reasonableness of the

{4702 MOT A0322130.DOC}

        total compensation requested, as well as the reasonableness of each separate compensation request made by the Trustee and his attorneys;

(c)     fixes a date by which substantive objections must be filed to the Applications and the Trustee's compensation request, which date is at least 60 days after the Trustee files his final reports to allow discovery to proceed if necessary;

(d)     vacates or resets the current October 10, 2012 date for a hearing on the pending Applications;

(e)     grants Shaw Gussis derivative standing to represent the interests of the debtors' estates as to all final compensation requests by the Trustee and his attorneys; and

(f)     provides Shaw Gussis with such other and further relief as may be appropriate under the circumstances.

In support of this motion, Shaw Gussis states as follows:

**Introduction**

1. On June 23, 2004, four of the debtors in theses chapter 7 cases filed related chapter 11 cases in this Court, one of which was a joint petition for Hasan and Sheri Merchant, husband and wife. The fourth chapter 11 case was filed shortly thereafter, on June 29, 2004. After determining that they could not effectively reorganize under chapter 11, the debtors voluntarily converted their cases to proceedings under chapter 7 of the Bankruptcy Code on August 16, 2004. The Trustee has been administering these cases since that date, a period of almost 7 years. Shaw Gussis represented the debtors during the chapter 11 phase of these cases and the Merchants for limited purposes after conversion of the cases to chapter 7.

2. Over the course of these cases under chapter 7, the Trustee's attorneys have reportedly been paid $1,884,635.77 in interim fees and expenses, and the Trustee himself has been paid $121,084.15 in interim fees and expenses. Thus, $2,005,719.92 has been paid to the

Trustee and his attorneys, while nothing has been paid to either chapter 11 administrative creditors or prepetition unsecured creditors. The Trustee's attorneys' interim fees and expenses, along with the Trustee's own interim fees and expenses, have already consumed approximately two-thirds of all funds collected for the debtors' estates, approximately $3 million as of this date. The final Applications of the Trustee and his attorneys, if allowed, would consume all remaining funds of all the estates. This is a result that should be avoided because it is squarely at odds with the Seventh Circuit's holding in *In re Taxman Clothing Company*, 49 F.3d 310, 316 (7th Cir. 1995) ("absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals.") (internal quotation marks and citations omitted); *see also In re Eckert*, 414 B.R. 404, 414 (Bankr. N.D. Ill. 2009) (quoting from *Taxman* in reducing fees of special counsel, not based on the results obtained, but to enable creditors to receive a dividend). Indeed, *Taxman* makes clear that an attorney breaches his fiduciary duty to the estate he represents by failing to "make a careful judgment whether the number of billable hours that he would be investing was commensurate with the expected gain." *Taxman*, 49 F.3d at 314.

3. Compensation in bankruptcy cases is very much in the public eye. The perceived abuses of compensation awards in bankruptcy cases have prompted the United States Trustee to consider new and more stringent guidelines to replace the original guidelines of 1996, prompted by bankruptcy legislation in 1994. Recently, the United States Trustee conducted a public hearing on the proposed new guidelines. In doing so the United States Trustee described the purpose of the 1996 guidelines as follows:

> In developing the proposed Guidelines, the Program was guided by five core principles: 1) ensuring that fee review is subject to client-driven market forces, accountability and scrutiny; 2) enhancing meaningful disclosure by professionals and transparency in the billing practice; 3) decreasing the administrative burden

of review; 4) maintaining the burden of proof on the fee proponent and not allowing the fee review process to shift that burden to the objecting party; and 5) increasing public confidence in the integrity and soundness of the bankruptcy compensation process.

*See* Transcript of June 4, 2012 attached as Exhibit A at 6, lines 11-22 (opening statement of Clifford J. White III, Director, Executive Office for United States Trustees). It is with these principles in mind we turn to the pending compensation complications.

**The Pending Applications**

4. On June 14, 2012, the law firm of Springer, Brown, Covey, Gaertner & Davis, LLC ("Springer"), of which the Trustee is a named member, filed a final Application for the allowance of $319,963.70 in fees and $14,005.82 in expenses (Dkt. No. 1282). The compensation request is not apportioned among the four separate estates. The Springer firm has already been paid a total of $181,759.30 in interim fees and expenses, which amount is subject to review and adjustment when the final Application is heard.

5. Also on June 14, 2012, the law firm of Freeborn & Peters LLP ("Freeborn), filed its final Application as special counsel to the Trustee in connection with a certain settlement enforcement agreement requesting $247,753.00 in fees and $22,482.92 in expenses (Dkt. No. 1283-1). Shaw Gussis believes that Freeborn has not been paid any interim compensation or expenses for the services and costs reflected in this Application, but is uncertain regarding whether Freeborn received additional interim payments between June 2009 and June of 2012.[1]

---

[1] Freeborn had previously sought an allowance of final compensation for these services in June of 2009, to which Shaw Gussis objected. A copy of Shaw Gussis original objection (Dkt. No. 1042) is attached as Exhibit B and incorporated herein by this reference. At that time, Freeborn reported it had been paid $1,278,618.04. Shaw Gussis' calculations, based on the Trustee's filed reports, reflect interim payments to Freeborn of $1,494,665.57. *See* Exhibit C attached hereto. On June 17, 2009, this Court entered an order that prohibited the Trustee from making any more interim payments to Freeborn or other counsel. (Dkt. No. 1073). A copy of that order is attached as Exhibit D. Freeborn's current Application, however, represents it has been paid $1,520,545.60, or $241,922.56 more than Freeborn represented it had been paid as of

6.   On June 18, 2012, Freeborn filed a second final Application as special counsel to the Trustee requesting $3,873,629.60 in fees and $178,829.06 in expenses (Dkt. No. 1289-1). The compensation request is not apportioned among the four separate estates. Freeborn has already been paid a total of $1,520,545.60 in interim fees and expenses, which amount is subject to review and adjustment when the final Application is heard.

7.   On June 15, 2012, the law firm of K&L Gates LLP ("Gates") filed its final Application requesting $638,833.50 in fees and $9,624.71 in expenses (Dkt. No. 1286-1). The compensation request is not apportioned among the four separate estates. Gates has already been paid $182,330.87 in interim fees and expenses and has waived its request for additional payment. Gates' interim fees and expenses are also subject to review and adjustment when the final Application was heard.

8.   The total amount of attorneys' fees and expenses for which allowance is sought by Freeborn, Springer and Gates is $5,305,122.31, or about 175% of the total amount of unencumbered funds all four of the debtors' estates have thus far produced. This is without regard to the Trustee's compensation, of which $121,084.15 has already been paid on an interim basis, subject to review and adjustment when final compensation requests are heard.

**The Response And Hearing Dates**

9.   The notices that accompany the Applications purport to fix August 17, 2012 as the last date to file objections to the Applications, and October 10, 2012 as the hearing date. Shaw Gussis is unaware of any order by this Court fixing August 17, 2012 as the last date to file objections to the Applications. If such a date has been fixed by the Court, as opposed to being

---

June 2009. Freeborn and the Trustee do not explain why, how or when Freeborn received the additional $241,922.56 it appears to have received between June 17, 2009, when the Court's order prohibiting further payments to Freeborn, and June 18, 2012, when the current version of the Application was filed.

{4702 MOT A0322130.DOC}                5

arbitrarily fixed by the attorneys themselves, it should be vacated and reset. In any event, no substantive responses should be required for 60 days after the Trustee's final report is filed for each estate so that discovery may be conducted. Also, the October 10, 2012 hearing date should be vacated or reset.

**The Trustee's Final Reports And Compensation**

10.     The Trustee's final reports must detail not just the amount and date of receipts and disbursements, but each specific asset that gives rise to a specified receipt, – i.e. avoidance actions, sale of real property, sale of personal property. To date, the Trustee has not provided such information although the forms provided by the Office of the U.S. Trustee allow and require that information to be produced.

11.     Without such a detailed report, it is impossible to evaluate the reasonableness of the attorneys' or the Trustee's services in these cases. For example, if more than $2 million of time was spent to collect only $400,000 from avoidance actions and other litigation, which appears to be the case here, this information should be made available to the Court and creditors. Or, if $2 million of the $3 million of receipts came from asset sales that require only $50,000 of legal services, and the remaining $1 million came from other activities that purportedly cost more than $5 million in legal fees, the Court and creditors should know that as well.

12.     In addition, the Court, Shaw Gussis, other creditors and the U.S. Trustee should be made aware of what the Trustee intends to request for compensation in these cases before any additional fees and expenses are considered or awarded to his attorneys. It appears from the Applications that many of the Trustee's duties, such as investigations of the debtor's business affairs, responding to creditor inquiries, coordinating the Trustee's several law firms and objecting to claims were services performed by the Springer and Freeborn firms. The Court should not compensate attorneys for services 11 U.S.C. § 704 requires of the Trustee, and

certainly should not allow the Trustee and his attorneys to both be compensated for these services.

13. Moreover, the Trustee's final compensation request should be specific as to how his compensation is calculated. For example, it appears that the Trustee received a total of $2,082,805 from the sale of Falcon Green and sought interim fees on that whole amount. However, the Trustee paid out $2,073,001.45 to the secured creditor, Parkway Bank, leaving the estate with net unencumbered cash of only $9,803.55 resulting from the Falcon Green sale. The Trustee's compensation, which will be paid from *unsecured* funds, should be calculated on the net benefit to the *unsecured* creditors and not on the gross sale proceeds of $2,082,805. Otherwise, the unsecured creditors would actually lose money if the estate incurs and pays a $60,000 trustee commission, plus tens of thousands of dollars in legal fees to Freeborn to obtain a sale order and complete the sale of Falcon Green.[2] Indeed, the Trustee would be breaching his fiduciary duties to the estate and its unsecured creditors if the administrative costs of the Falcon Green sale were to exceed the net proceeds that the estate received. *Taxman*, 49 F.3d at 314. Creditors would have been much better off if the Trustee had simply abandoned Falcon Green, instead of incurring the cost of its sale. If there are other such instances in these cases, the Trustee should be candid and forthcoming in his final compensation request so this Court and creditors need not spend an inordinate amount of time and effort trying to determine the reasonableness of the Trustee's final fee request.

14. In summary, objections to the attorneys' Applications should not be required for at least 60 days after the Trustee files a detailed final report and account that reflects the source,

---

[2] The Freeborn Application does not categorize its "real estate services" in a fashion that reflects the amount of time spent and expenses incurred as to specific real estate sales.

by category, of all receipts and the specific calculation of his own final compensation request in each case.

**The Applications, As Filed, Are Deficient**

15. The Applications, as filed, are deficient in form. For example, the Freeborn Application that requests final fees and expenses of $4,052,458.06 (Dkt. No. 1289-1), does not categorize the time entries spent on each of the various activities. All that is provided in Exhibit JJ is a two page summary of time spent for each of six broad categories of time. A copy of that exhibit is attached hereto as Exhibit E. This does not comply with Local Rule 5082-1. Similarly, the Freeborn Application is almost bereft of any description of what was actually recovered for the benefit of creditors by Freeborn spending more than $4 million of time and expenses on the six matters detailed. For example, Exhibit JJ reflects a total of $907,670.85 in time spent on the RERM litigation, but all that was accomplished was a judgment of $150,000. There is no indication if *anything* was collected on the judgment. See Application at ¶¶ 66-67. Moreover, because Freeborn failed to provide the Court with a proper fee application, among other reasons, Judge Schmetterer allowed Freeborn only $90,000 in fees for the firm's work for which Freeborn now seeks over $900,000 in fees. A copy of Judge Schmetterer's decision on this matter is attached as Exhibit F.

16. Freeborn also reports that one million six hundred thousand dollars ($1,600,000) of time was spent on the so-called investigation and prosecution of the Ponzi scheme claims, this being in addition to the $640,224.05 of time separately charged to the category described as "Merchant" on Exhibit JJ. However, not a word is said about what, if anything, was recovered for the chapter 7 estates as a result of this effort. Interestingly, Gates and Springer also have been paid, and Springer wants yet more money, on account of these Ponzi scheme claims that, to the best of Shaw Gussis' information, have produced about $400,000 or less in actual proceeds.

{4702 MOT A0322130.DOC}                              8

Similarly, the Freeborn Application fails to explain what value the chapter 7 estates received from $368,513.88 of "general services" or $356,039.98 for "real estate services," which presumably includes fees for the sale of Falcon Green, which netted unsecured creditors only $9,803.55. Freeborn must disclose, on a property by property basis, how their fees for the sale or other disposition of each property were calculated. It would be unconscionable for the unsecured creditors to be charged hundreds of thousands of dollars in legal fees if the debtor's estates did not receive more for unsecured creditors than the cost of the legal services. Moreover, it is not explained why more than 80 Freeborn timekeepers, including clerks and secretaries, billed time to these cases. It appears that the senior Freeborn partners that were in charge of the Trustee's representation in these cases failed in their role of supervising the engagement and the estates are being charged for duplicative and unproductive services just based on the incredible number of timekeepers charging time to the engagement.

17. Freeborn's other Application as special counsel (Dkt. No. 1283) for services from April 1, 2009 through June 12, 2012, also does not categorize services between the enforcement action and the so-called Villafria investigation. Similarly, that Application also fails to explain what, if anything, Freeborn actually accomplished by the investigation, why the investigation was necessary, why the Trustee did not make the Villafria investigation himself, as required by 11 U.S.C. § 704(4), and why the Villafria investigation is even legal work that is supposedly compensable. Attorneys cannot be paid to do a trustee's work. Importantly, Freeborn's Application also fails to state how much, if anything, has been collected by the Trustee as a

result of Freeborn's enforcement action,[3] and what the cost of the enforcement action is in relationship to its actual and current monetary benefit to the estate.

18. Similarly, the Gates Application is hopelessly vague about what has been accomplished by virtue of more than $645,000 of time and expenses spent by more than 15 timekeepers over three years. Even if Gates is only seeking payment of $182,330.87, the amount it has already received, its requested fees must still be justified. Frankly, it appears that most if not all of the time spent by the Gates firm, under the direction of Harley Goldstein – the attorney responsible for much of Freeborn's valueless time – created more problems than were solved. Indeed, it looks as if most of the Springer firm time was spent babysitting the Gates attorneys or cleaning up their litigation messes, also at proposed substantial cost to the estate. One wonders what in the world the Trustee was doing while all of this was going on, first at Freeborn and then at the Gates firm. Frankly, the Trustee's lack of proper management of his professionals and these estates in general is appalling.

19. Further, the Gates Application does not categorize the time spent, does not reflect the value of the services rendered, and does not deal with the clear duplication of effort between itself and the Springer firm. The fact that the Gates firm "engaged in significant motion practice and extensive discovery efforts," as the Application reflects on page 7, but the result of these prodigious services is not reflected in the Gates Application, must lead one to conclude that *no* value was derived from these services, which services were neither reasonable nor necessary.

20. Again, the fact that "secured" claims and unsecured claims were released by virtue of the Gates firm's efforts, or the phony claim of 22nd Century Partners, Ltd. was waived, is meaningless in a case where these claims appear to have no value. Like the sale of Falcon

---

[3] Shaw Gussis estimates that less than $120,000 has thus far been collected, compared with Freeborn's fee request of $247,753.

{4702 MOT A0322130.DOC}                              10

Green, the Debtors' estates are worse off for the Gates firm's efforts. The Gates Application should be stricken for lack of compliance with §§ 330, Rule 2016 and Local Rule 5082-1 and the funds paid to Gates returned so that legitimate creditors can be paid.

21.     While Shaw Gussis has fewer issues with the form of the Springer Application, there nevertheless remain significant problems with that Application. For example, it is unclear why Springer is entitled to compensation in an amount that consumes most or all of the amount recovered in many of the adversary proceedings Springer prosecuted. In many cases it appears that significant amounts are sought in cases where there was *no* recovery at all. In addition, Springer seeks almost $50,000 for "coordinating" with Freeborn and acting as "lead counsel" in all of the cases. At best, these services are duplicative or unnecessary. Further, these appear to be tasks for the Trustee to perform as the client, not Springer as counsel for the Trustee.

22.     In total, Springer is seeking $319,963.70 in fees, plus $14,005.82 for expenses, on top of the $181,759.30 Springer has already been paid. This amounts to a total of $515,728.82, but there is no showing of why only $226,561 was collected from the adversary proceedings, and why that relatively paltry amount was collected only after Freeborn and Gates ran up millions of dollars in fees pursuing the same claims.

23.     Springer has failed to exercise any billing judgment under these circumstances, demanding to be paid for every minute of time spent no matter the value to the estate, the duplication of effort and the unproductive nature of the services rendered. This is contrary to controlling law in this jurisdiction.

> Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits – measured by standards of reasonableness – to what a professional can demand in a bankruptcy case." *Leventhal*, 19 F.3d at 1178. "An increasing attitude in the bankruptcy community is that if the time is actually expended, the

applicant is entitled to receive all fees requested. All professionals must be disabused of this fallacious notion." *Chas. A. Stevens*, 105 B.R. at 871.

*Eckert*, 414 B.R. at 410. This applies to Freeborn and Gates as well as Springer. Merely because some timekeeper makes an entry on a billing sheet or a computer does not mean that compensation requested for that time entry must be awarded regardless of amount of time spent, the value (if any) of the services and the result obtained for the estate by virtue of the services.

24. The Trustee and the attorneys bear the burden of proof on the amount of compensation and expenses to be awarded. *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987) ("The integrity of the bankruptcy system . . . is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*."). The Court has an independent duty, regardless of whether any objection is made, to review all compensation requests. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden cannot be taken lightly because every dollar expended on fees results in a dollar less for creditors. *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). In reviewing final compensation requests, the Court must take into consideration prior interim payments and view the matter as a whole; that is, what the total amount of compensation requested is by all professionals and the Trustee, measured against what are the beneficial results of the services rendered. While Trustees and attorneys may not be guarantors of beneficial outcomes, they each have fiduciary duties to the estate they represent to make a careful judgment as to what services are truly necessary and likely to produce value over their cost. *Taxman*, 49 F.3d at 314. While it undoubtedly takes a certain amount of time to do a proper cost-benefit analysis of potential litigation, it is impossible to understand how any professional could, in good faith, run up millions or even hundreds of thousands of dollars of fees before figuring out there will be little if any benefit to creditors by continuing on with litigation. The Trustee and his attorneys cannot

possibly justify the time spent in these cases given the results, or lack thereof, that have been achieved.

25. The pending Applications do more to obfuscate than enlighten. They fail to provide this Court and creditors with a straightforward account of what the attorneys did and what they accomplished that benefitted creditors (other than themselves). Dumping hundreds of pages of timesheets on the Court and creditors creates more of a burden than a benefit when the information is not cogent, properly organized or in a useable format. The current Applications should be stricken and refiled in an appropriate and useful format, after some billing judgment is exercised by the attorneys seeking final compensation.

**Derivative Standing Request**

26. Shaw Gussis also requests that it be granted derivative status to represent the interest of the estates with respect to all disputes regarding the Trustee's and his attorneys' final compensation applications. Shaw Gussis is well qualified to represent the interests of the estates and their creditors, has extensive knowledge about these cases and has already devoted considerable effort to these issues. On the other hand, the Trustee is hopelessly conflicted, particularly with respect to his own compensation and that of the Springer firm.

27. Seventh Circuit precedent allows for derivative representation of an estate in cases where a trustee has unjustifiably refused to act, there is a colorable claim or right to protect and prior authorization has been granted. *In re Consolidated Industries Corp.*, 360 F.3d 712, 716-17 (7th Cir. 2004), *Fogel v. Zell*, 221 F.3d 955, 965-66 (7th Cir. 2000); *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990).

28. In this case, the Trustee cannot be expected to act impartially as to his own fees or the fees of his attorneys, particularly those of the Springer firm. This blatant conflict of interest, coupled with colorable objections to the pending fee requests of the attorneys, provides ample

justification for the grant of derivative standing. In addition, allowing Shaw Gussis to act on behalf of these estates would assist the Court in evaluating the final compensation requests that will apparently total in excess of $5.5 million by the three law firms and the trustee.

WHEREFORE, Shaw Gussis requests that an order in the form attached hereto be entered and that Shaw Gussis have such other and further relief as may be appropriate under the circumstances.

                                       Respectfully submitted,

                                       Shaw Gussis Fishman Glantz
                                          Wolfson & Towbin LLC

Dated: July 13, 2012                    By:   /s/ Steven B. Towbin
                                                    A member

Steven B. Towbin (#2848546)
Richard M. Fogel (#3127114)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151  telephone
(312) 980-3888  facsimile

{4702 MOT A0322130.DOC}                14